(April 29, 2004)

■  NEW FALLS CORPORATION, Respondent, v BOARD OF MANAG-
ERS OF THE PARKCHESTER NORTH CONDOMINIUM, INC., Appellant,
et al., Defendants. RONALD MAGRO, Nonparty Respondent. [776
NYS2d 239]—

Order, Supreme Court, Bronx County (Paul A. Victor, J.),
entered October 2, 2002, denying the motion of defendant Board
of Managers of the Parkchester North Condominium, Inc. to
vacate the judgment of foreclosure and sale of unit 2D at 2200
East Tremont Avenue in the Bronx, including the referee's deed,
and to dismiss the action, unanimously reversed, on the law and
the facts, without costs or disbursements, the denial of the mo-
tion vacated, the matter remanded for a hearing on the issue of
whether plaintiff New Falls Corporation had actual notice, at
the time it commenced this action, of Parkchester's ownership
interest in said unit, and for further proceedings consistent
with the determination reached after said hearing. Order, same
court and Justice, entered on or about April 2, 2003, denying
defendant Parkchester's motion, denominated as one to "renew,
reargue and reconsider" the aforesaid order, unanimously
dismissed, without costs or disbursements, as taken from a
nonappealable order.

Plaintiff, the assignee since December 23, 1995 of a mortgage,
recorded on January 3, 1974, on a condominium unit, 2D, at
2200 East Tremont Avenue, Bronx, which assignment was not
recorded until January 13, 1999, commenced this action on July
20, 2000 to foreclose the mortgage, alleging, upon information
and belief, that the defendants Clarence Simmons and Mae S.
Simmons are "individuals residing at 2200 East Tremont Ave-
nue, Unit 2D" and that defendant Board of Managers of the
Parkchester North Condominium, Inc. (PNC) is "the owner of
the premises located at 2200 East Tremont Avenue, Unit 2D."
No other allegation as to anyone or any other entity owning the
premises appears in the summons and complaint.

It is undisputed that PNC, which, on March 13, 1996, had
filed a common charges lien on the unit, thereafter, on January
21, 1998, obtained a judgment of foreclosure and purchased the
unit at a foreclosure sale. The deed, dated December 8, 1998,
which it subsequently recorded, however, was defective, reciting

the address as 1970, not 2200, East Tremont Avenue and identifying the unit as Apartment TH, not 2D. The deed also referred to "Tax Lot No. 1806 in Block No. 3944" when, in fact, the premises are located on Lot No. 3197. By deed dated December 18, 1998, recorded on April 6, 1999, PNC attempted to correct the earlier deed by inserting the correct address and correct tax lot number, 3197. The "corrected" deed still incorrectly referred to the foreclosing of a lien recorded on April 6, 1999.[1]

PNC did not answer the complaint and plaintiff obtained a judgment of foreclosure and sale. Thereafter, in July 2001, a referee's deed was given to Ronald Magro, the purchaser at the sale. By order to show cause dated September 5, 2001, PNC, claiming that it was never properly served, moved to vacate the judgment of foreclosure and sale and referee's deed and to dismiss the complaint. Supreme Court ordered a traverse, which was rendered impossible when the process server suffered debilitating medical emergencies. In any event, plaintiff argued that a traverse was unnecessary because, given PNC's improperly recorded deed, it had no recorded ownership interest in the premises at the time plaintiff commenced its foreclosure action. Even if service had been improper, plaintiff argued, its judgment of foreclosure and the referee's deed would be unaffected; the only result would be the survival of PNC's lien.

In the first order on appeal (October 2, 2002), the Supreme Court refused to reconsider its earlier order directing a traverse, holding, in light of plaintiff's failure to prove service, that PNC was never properly served. It further ruled, however, that such failure of service did not render the judgment of foreclosure jurisdictionally defective because PNC failed to establish that it had a properly recorded "lien" on the subject condominium unit.[2] The court accorded no significance, as argued, to plaintiff's allegation in the complaint that PNC was the owner of the unit, since that assertion was made upon information and belief and incapable of affording PNC any rights. Noting that a notice of pendency was filed on July 21, 2002 and citing CPLR 6501, the court held that if PNC recorded a lien subsequent to the date, it was bound by all proceedings taken since the filing to the same extent as if it were a party. PNC subsequently

---

1. While the IAS court, in its October 2, 2002 decision, stated that the "corrected" deed still set forth the address of 1970 East Tremont Avenue on its face, Schedule A, attached to the deed, correctly identifies the address of the property.

2. Although the court's reference to a "lien" was in error, when viewed in context it is clear that the court intended the word "deed." PNC never claimed a lien; it claimed title.

moved to "renew, reargue and reconsider." The order denying that motion is also on appeal.

The motion to vacate the judgment of foreclosure and sale should not have been denied without a resolution of the preliminary issue of whether, at the time plaintiff commenced this action, it had actual notice of PNC's ownership interest in the condominium unit. RPAPL 1311, entitled, "Necessary defendants" provides, in pertinent part:

"Each of the following persons, whose interest is claimed to be subject and subordinate to the plaintiff's lien, shall be made a party defendant to the [foreclosure] action:

"1. Every person having an estate or interest in possession, or otherwise, in the property . . .

"3. Every person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff."

The statute is a codification of the equitable principle that persons holding title to the premises or acquiring any right to or lien on the property subsequent to the mortgage should be made parties in the foreclosure action (*Polish Natl. Alliance of Brooklyn v White Eagle Hall Co.*, 98 AD2d 400, 403 [1983]; *see Jacobie v Mickle*, 144 NY 237 [1894]). The principle has its basis in the underlying function of a foreclosure proceeding— "to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale" (*Polish Natl. Alliance of Brooklyn* at 404).

PNC claims that it is entitled to a vacatur of the judgment of foreclosure and sale as a result of plaintiff's failure to serve it, while plaintiff and Magro, the holder of the referee's deed, argue that PNC's lien was extinguished by the foreclosure sale, except to the extent of any proceeds therefrom in excess of plaintiff's mortgage (*see* RPAPL 1353 [3]; *see also Bankers Trust Co. v Board of Mgrs. of Park 900 Condominium*, 81 NY2d 1033, 1036 [1993]). PNC argues that it had more than a common charges lien, having foreclosed on that lien under Real Property Law § 339-aa "in like manner as a mortgage of real property," and, after a foreclosure sale, having obtained a referee's deed to the unit. While that deed, as recorded, may have been defective to give notice to plaintiff of PNC's ownership interest in the unit, if plaintiff had actual notice of this unrecorded conveyance to PNC at the time it commenced this foreclosure action, then the judgment of foreclosure and sale would have no legal effect on PNC's interest in the unit (*see Kursheedt v Union Dime Sav. Inst. of City of N.Y.*, 118 NY 358, 363 [1890]; *Lamont v Cheshire*,

65 NY 30, 38 [1875]). Supreme Court's determination that merely because plaintiff's complaint allegation that PNC was the unit owner was based "upon information and belief," this rendered the allegation of no legal significance is no answer, given that at the time of the commencement of the action PNC had filed a corrected deed for the unit with the proper block and lot numbers. Nor is plaintiff able to explain why, in the absence of some information that PNC was the owner of the unit, it did not name the Simmonses, the mortgagors and occupants of the unit, as owners. It is also significant that, in the face of PNC's submission of a certified title report showing that it was the record owner as of April 6, 1999, the date of the recording of the corrected deed, plaintiff never submitted any evidence to the contrary. Thus, from this record, it is not clear that at the time it commenced this action plaintiff did not have actual notice of PNC's ownership of the unit. If it develops that it did, then the relief sought by PNC should be granted in full. Concur—Buckley, P.J., Mazzarelli, Sullivan, Friedman and Gonzalez, JJ.